ALBERT N. HORNER *vs.* J. HALL PLEASANTS.

*Wharf—Act of 1796, ch. 45—Perpetual use of Land under Water—Franchise—Wharf as a Statutory appurtenance to a Lot—Assignment of Land under a Commission for Partition—Presumption.*

Where a wharf was made in strict accordance with and under the powers vested in the lot-owners by the Act of 1796, ch. 45, the person who erected such improvement, while not obtaining a technical fee in the land covered by the water, secured a perpetual use of such land for the purpose of keeping up the wharf, and this license or franchise, so long as used, cannot be annulled.

The wharf was a statutory appurtenance to the lot and would pass under the general terms, "rights, privileges, appurtenances and advantages belonging to the same," used in a deed conveying such lot.

Where under a commission issued for the partition of an intestate's estate, a warehouse and lot was assigned, but no express mention was made of the wharf attached thereto, in the report of the commissioners, but reference was made therein to the deed, which was before them, and by which they were governed, conveying the lot to the intestate, and which conveyed the wharf by the use of the terms, "all and every the rights, privileges, appurtenances and advantages to the same belonging, or in anywise appertaining," it will be presumed that the commissioners allotted it in the same way, and that the wharf passed.

APPEAL from the Circuit Court of Baltimore City.

This suit was brought to enforce the specific performance of a written contract entered into between Albert N. Horner and J. Hall Pleasants for the sale to the latter by the former of all of his interest and estate in and to a warehouse and lot in the City of Baltimore, together with a wharf fronting twenty-five feet thereon. A *pro forma*

decree was passed by agreement of counsel dismissing the bill of complaint without prejudice. From this decree the complainant appealed. The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, and BRYAN, J.

*J. J. Wade*, for the appellant.

*Luther M. Reynolds*, for the appellee.

STONE, J., delivered the opinion of the Court.

The plaintiff below, Horner, agreed in writing to sell to Pleasants, the defendant, his interest, being two undivided thirds in a warehouse and lot, No. 80 Light street, Baltimore, "together with a wharf fronting twenty-five feet in front of said property" for a certain sum, to be paid in cash as soon as the title could be examined and approved. The agreement goes on to say, "the said property is in fee subject to the life estate of James W. Barroll."

The defendant upon examination was dissatisfied with the plaintiff's title to the wharf, and refused to perform his agreement upon the ground that the plaintiff had not a fee in the wharf, although he had in the lot. The only question for the decision of the Court therefore is whether the plaintiff had such a title to the wharf as a Court of equity would compel the defendant to accept.

The warehouse lot, No. 80 on Light street, mentioned in the agreement was one of the lots described in the Acts of 1796, ch. 45, and 1801, ch. 92. It then belonged to a man named Calhoun, and he availing himself of the privileges conferred by those Acts built the wharf.

The Act of 1796, ch. 45, and the Act of 1745, ch. 9, have been more than once before this Court, and their construction we think settled in *Page vs. Mayor, &c., of Balti-*

*more,* 34 *Md.,* 558; *Hazlehurst, et al. vs. Mayor, &c., of Baltimore, et al.,* 37 *Md.,* 199, and *Baltimore & Ohio R. R. Co. vs. Chase,* 43 *Md.,* 23, and we do not deem it necessary to repeat all that was said in those cases.

There is no question as to lines or boundaries, and the only matter in dispute is the title to the wharf. This wharf was made in strict accordance with and under the powers vested in the lot-owners by the Act of 1796, and it is important only in this case to decide what sort of title those who made the wharves acquired.

This Court said in *Hazlehurst's Case,* 37 *Md.,* 199, that that question was more difficult than important *then* to be determined, because if it were conceded that it remained in the State, that fact would not affect the rights and privileges of the wharf owners.

This is a purely statutory grant, and one that the State was fully competent to make. As said in *Chase's Case,* 43 *Md.,* 23, the right of the lot-holders to make these improvements in the water is a franchise or vested right peculiar in its nature, but a *quasi* property. This statutory franchise was an incident or appurtenance to the lots fronting on the water. It was the object of the State to hold out inducements to such lot-owners to make these improvements for the benefit of the trade and commerce of the city. When made they were declared to be the right of such improvers forever. In order to effect this object it was *not* necessary, to grant a technical fee in the land covered by the water. But the State did grant a *perpetual use* of such land for the purpose of erecting and keeping up these wharves, and this valuable license or franchise, as long as used, she can no more annul than she could a patent in fee. The wharf (and not the land beneath it) is mentioned in the agreement, and the plaintiff will be in a position to perform his agreement, if he has title to the wharf.

The wharf as we have said was a statutory appurtenance to the lot and therefore passed under the general terms

used in the several deeds conveying the lot in question, until it is traced in 1837 to Frisby and Andrew F. Henderson. These two Hendersons died before 1845, seized of both the lot and the wharf. The presumption is that the wharf passed to them under the terms "rights, privileges, appurtenances and advantages belonging to the same" used in the deed to them. Upon the death of the Hendersons intestate, a commission was issued out of the Chancery Court to divide their lands. Under this commission this warehouse lot was assigned, but there is no mention whatever of the wharf, and the defendant insists that such omission is fatal to the title, and that the wharf is still the property of the Henderson heirs generally.

No express mention of the wharf was made in the report of the commissioners, and no deeds were executed, although the report of the commissioners was confirmed by the Chancellor. The report is minutely and carefully drawn and speaks of and describes the lot in controversy as " Warehouse No. 6, Light Street Wharf," and values it. It is a fair presumption from the report itself that the commissioners did not consider the land over which the wharf was built as the property of the Hendersons, but considered the wharf, as we have said it was, an appurtenance to the lot and passed with it. Although the report of the commissioners does not mention the wharf specifically, yet it does mention that this warehouse lot was conveyed to the *Hendersons* by Rudenstein by deed, and gives the date of the deed and when and where it was recorded, showing that the deed was before the commissioners at the time of the valuation and allotment, and that they were governed by the deed. As the deed from Rudenstein to Henderson conveyed, as we have said, the wharf by the use of the terms " all and every the rights, privileges, appurtenances and advantages to the same belonging or in anywise appertaining," we must presume that the commissioners allotted it in the same way,

and that the wharf passed.    This presumption is so
strengthened and fortified by the fact that the heir to
whom the warehouse was allotted went into possession of
the wharf with the warehouse at the time of the allot-
ment, and has remained in undisturbed and undisputed
possession for upwards of forty years, that we must con-
clude that the title to this wharf cannot be successfully
assailed upon that or any other ground brought to the
notice of this Court.    The decree of the Court below dis-
missing the bill in this case must be reversed, and the case
remanded for a decree in conformity with this opinion.

> *Decree reversed, and*
> *cause remanded.*